UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **CHRISTA CHAISSON MAITLAND** | * | **CIVIL ACTION** |
| **AND GULF COAST FLOOD, LLC** | * | |
| **VERSUS** | * | **NO. 12-2001** |
| **STATE FARM FIRE AND CASUALTY** | * | |
| **INSURANCE COMPANY,** | * | |
| **STATE FARM MUTUAL INSURANCE** | * | **SECTION "C" (3)** |
| **COMPANY, BRYAN SCHEXNAYDER** | * | |
| **BEN RODRIGUEZ, BEN RODRIGUEZ** | * | |
| **AGENCY, ABC INSURANCE** | * | |
| **AGENCY, XYZ INSURANCE AGENCY** | * | |

**ORDER AND REASONS[1]**

Pending before the Court are two motions: a Motion to Remand this suit to the Civil District Court for the Parish of New Orleans ('Motion to Remand') filed by Christa Chaisson Maitland and Gulf Coast Flood, LLC (collectively 'Plaintiffs') and a Motion to Dismiss for failure to state a claim filed by State Farm Fire & Casualty Company, State Farm Mutual Automobile Insurance Company, Bryan Schexnayder, Ben Rodriguez, and Ben Rodriguez Agency, Inc. (collectively 'Defendants'). (Rec. Doc. 14) (Rec. Doc. 13). Plaintiffs allege this case does not involve a federal question nor is there complete diversity between the parties involved, thereby alleging Defendants have improperly removed the case to this Court under 28 U.S.C. § 1331. *Id.* Having considered the record, the memoranda of counsel and the law, the Court GRANTS Plaintiffs' Motion to Remand and DENIES as MOOT Defendants' Motion to Dismiss for the following reasons.

---

[1] Jessica Earl, a third year law student at Tulane University, helped in the drafting of this Order and Reasons.

1

## I. BACKGROUND

This case arises out of an alleged conversion of property, a flood policies book of business, owned by Plaintiff Christa Maitland ('Christa'). (Rec. Doc. 14-1, 1). Christa is the widow of former independent State Farm insurance agent, Kepper Maitland ('Kepper'), who sold federal Write-Your-Own ('WYO') Insurance policies allegedly owned by State Farm (Rec. Doc. 1, 3). Under the WYO program, various insurance companies wrote standard flood policies for their clients, and the underwriting of losses was administered by the National Flood Insurance Program ('NFIP') which is run by the Federal Emergency Management Agency ('FEMA'). *Id.* As an independent State Farm agent, Kepper sold various State Farm insurance policies, including flood insurance policies written by State Farm under the WYO program. (Rec. Doc. 1-1, ¶ 5). On June 9, 2010 State Farm announced that effective October 1, 2010, State farm would stop selling, renewing, and servicing all flood policies and, as a result, NFIP would take over the administration of all outstanding policies. *Id.* at 10. State Farm further announced that individual State Farm agents could, however, choose to continue to write flood policies for NFIP directly after the effective date, on an independent basis. *Id.* State Farm initiated a one-year transition period for the "transfer of ownership" as individual flood policies would transfer to NFIP Direct at their corresponding renewal time. *Id.* at 11. Accordingly, Kepper timely enrolled with NFIP Direct so as to maintain his flood-policy commissions. *Id.* at 13. Starting on October 1, 2010, Kepper began to receive payments from NFIP for all commissions due for the renewal of his flood policies. *Id.* at 14. Kepper was continuously paid all flood policy commissions until the time of his death, on June 25, 2011. *Id.*

Shortly after Kepper's death, representatives from State Farm allegedly met with Christa at her home to discuss the future of Kepper's business, including the flood policies. *Id.* at 16. During

2

the meeting, the State Farm representative allegedly advised Christa that she had ownership over the flood policies. *Id.* After the meeting, Christa remained in contact with both State Farm and NFIP about her intent to exercise her right to the flood policies and commissions owned by her late-husband. [2] *Id.* at 17. Plaintiffs allege Christa's ownership of Kepper's flood policies was also recognized by NFIP Direct in both a written statement and through NFIP's continual payments to Christa of the commissions that were due on the renewing policies. *Id.* at 19. NFIP continued to pay Christa the flood policy commissions until September 2011. *Id.* In August 2011, Christa contracted with Gulf Coast Flood, LLC ('Gulf Coast') wherein Gulf Coast would help manage the flood policies that Christa inherited from Kepper on a fee-sharing agreement while Christa completed the required education to obtain an insurance license. *Id.* at 20. Christa completed the necessary education to obtain her Temporary Property and Casualty Producer License from the Louisiana Department of Insurance, and her license was issued on September 30, 2011. *Id.* at 21.

Plaintiffs allege that throughout these months, State Farm misappropriated Plaintiffs' flood policies despite knowledge that Christa had taken actions, and continued to take actions, to exercise her ownership interest over the flood policies in question. *Id.* at 22. State Farm, however, transferred the Plaintiffs' policies to State Farm agent Bryan Schexnayder. *Id.* at 23. The policies were later re-transferred by State Farm to Ben Rodriguez and the Rodriguez Agency. *Id.* at 27. Rodriguez is the State Farm agent who allegedly was assigned to take over administration of Kepper's offices in Algiers as well as Kepper's State Farm book of business, after his death. *Id.* Plaintiffs were unaware

---

[2] By judgment of Civil District Court, Parish of New Orleans on September 14, 2011, in the *Succession of Kepper McKee Maitland*, Docket No. 11-9885, Christa was judicially recognized as Kepper's surviving spouse and placed in legal possession of her one-half interest in their community property which allegedly included any and all interests in State Farm Insurance Agency owned by her deceased husband. (Rec. Doc. 1-1, at 18).

of any of these transfers until Christa received an email from NFIP on September 27, 2011 stating "State Farm has transferred all Kepper's policies to Bryan Schexnayder to be serviced by Mr. Schexnayder until a new agent is trained (or you get your license). FEMA requires flood policies to be serviced by a licensed, property and casualty insurance agent with flood certification." *Id.* at 23. A subsequent email, also dated September 27, 2011 was sent from NFIP to Christa, Schexnayder, and Gulf Coast which stated that Schexnayder was aware the transfer of flood policies was a temporary arrangement until a new agent was trained to take over Kepper's old business. *Id.* at 24. The letter went on to indicate that if and when Christa received her own insurance license, NFIP would approach Schexnayder and determine the final placement of the policies. *Id.* at 24.

Plaintiffs allegedly notified NFIP that Christa had obtained her insurance license in order to legally manage her husband's old policies, at which point NFIP informed her that Christa needed to contact Schexnayder and State Farm about the return of the policies. *Id.* at 25. When Plaintiffs contacted the Defendants requesting return of the policies, Defendants allegedly claimed ownership of the flood policies. *Id.* at 26. Defendants allege that because the emails from NFIP were indicative of FEMA administrative requirements, State Farm was merely acting in accordance with the directives of NFIP in interpreting and implementing an agency regulation to transfer policies to a certified insurance agent. (Rec. Doc. 1, at 5). Defendants allege that NFIP was the party that transferred the flood policies to Schexnayder, and State Farm had no part in the transfers. (Rec. Doc. 27, 5). Defendants further allege that in September 2010, all State Farm flood policies had been transferred back to NFIP, and accordingly, Plaintiffs' claim regarding ownership is actually a claim against NFIP regarding NFIP's exercise of discretion. *Id.* Defendants claim that any State Farm action turns exclusively on the interpretation of federal law and regulation under which NFIP and

FEMA are subject. *Id.* Accordingly, on August 3, 2012, Defendants removed the case to this Court based on federal question jurisdiction arising under 28 U.S.C. § 1331. (Rec. Doc. 1). On September 4, 2012 Plaintiffs filed a Motion to Remand on the basis that all of Plaintiffs causes of action are based on Louisiana State law. (Rec. Doc. 14).

## II. LAW AND ANALYSIS

### A. Remand Standard

Under 28 U.S.C. § 1441, a case may be removed to federal court if it has "original jurisdiction." The plaintiff, however, can then make a motion to remand the case back to state court if he believes the case should not have been removed, and remand is proper if at any time the Court lacks subject matter jurisdiction. 28 U.S.C. § 1441(c). When removing a case, the defendant must prove that the district court has subject matter jurisdiction. *DeAguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995). The parties in an action cannot consent or waive defects of subject matter jurisdiction. Fed.R.Civ.P. 12. Any doubts as to the propriety of the removal should be construed strictly in favor of remand. *Manguno v. Prudential Prop. and Cas. Ins. Co.,* 276 F.3d 720, 723 (5th Cir. 2002). "The burden of establishing subject matter jurisdiction in federal court rests on the party seeking to invoke it." *St. Paul Reinsurance Co. v. Greenberg,* 134 F.3d 1250, 1253 (5th Cir. 1998). Accordingly, if a case is removed to federal court, the defendant has the burden of establishing subject matter jurisdiction.

### B. Plaintiff's Causes of Action

In their original 'Petition for Damages' filed by Plaintiffs in the Civil District Court for the Parish of Orleans, Plaintiffs asserted claims against the Defendants for violation of the Louisiana Unfair Trade Practices Act (LUPTA), claims of property interests, breach of contract, and Louisiana antitrust laws. (Rec. Doc. 14-1). Plaintiffs state that claims asserted in their original Petition for Damages are strictly state-law claims. (Rec. Doc. 14-1, 5-6). Throughout Plaintiffs' original Petition, Plaintiffs highlight the communications and decisions made between Christa and NFIP regarding Kepper's flood policies. Plaintiffs assert, however, that any mention of NFIP or FEMA was solely as contextual basis for Plaintiffs' state law claims. Plaintiffs allege that claims center solely on the determination of ownership of flood policies, and property interest claims for the settlement and distribution of a decedent's estate are strictly matters of state law. Defendants' claim that mere mention of federal agencies invokes federal question is a mischaracterization of the Plaintiffs' causes of action. (Rec. Doc. 14-1, 8).

After consideration of the claims at issue, this Court seeks guidance from the Fifth Circuit decision in *Central Oil & Supply Corp. v. US*, where the Court held that with respects to ownership of property, state law controls, even if federal law creates the legal interests at stake. *See* 557 F.2d 511, 516 (5th Cir. 1977). While it is true that Kepper's WYO flood policies were created and administered by the federal program NFIP, the issue as to the legal ownership of these policies remains a matter of state law. "The rule that state law defines the type of property interest held by a decedent is well established." *Gilchrist's Estate v. C.I.R.*, 630 F.2d 340, 345 (5th Cir. 1980). In consideration of the substantive quality of the claims set forth in Plaintiffs' Petition for Damages, specifically in regards to the ownership of Kepper's flood policies, the governing law dictates that such claim must be adjudged and interpreted by applying state property law. Therefore, any issues

6

of ownership of rights or assets that fall within the regime of the state law community property system, shall be a matter for state court.

**C. Federal Preemption of NFIA or FEMA (Rec. Doc. 28)**

Defendants claim that NFIP and FEMA are the owners of the policies that Plaintiffs allege rightfully belong to Christa. Defendants allege that because the policies are owned by NFIP, this is a matter governed by federal jurisdiction. (Rec. Doc. 27, 4-7). Congress established the NFIP by enacting the National Flood Insurance Act of 1968, 42 U.S.C. § 4001, *et. Seq.* Under the NFIP, the director of FEMA, can use private insurance companies, WYO companies, to aid in the administration of the program. The public can purchase insurance policies either directly from FEMA or from the WYO companies. 42 U.S.C. § 4071-72 (2006). Section 4072 also provides that the federal court has original and exclusive jurisdiction for claims arising under the NFIP. It is clear that the Federal District Courts have exclusive subject matter jurisdiction in cases arising out of policy-holders claims under flood insurance policies issued pursuant to the NFIP. *Powers v. Autin-Gettys-Cohen Ins. Agency, Inc., et. al.,* 2000 WL 1593401, *3 (E.D. La. 2000); *Corliss v. South Carolina Ins. Co.,* 2004 WL 2988497, *4 (E.D. La. 2004).

In this case, however, the facts do not center on a policy-holder's claim for flood damages, but rather whether a widow is entitled to maintain control over her deceased-husband's book of insurance policies by way of community property. State Farm alleges that because the contracts were technically owned by NFIP and not State Farm, the issue of property ownership is between Christa and the federal government. The Court does not agree. Federal preemption in regards to

NFIP flood policies is limited to handling flood insurance claims and not in regards to claims concerning ownership of property between insurance companies and their licensed insurance agents.

State Farm argues that by mentioning rules, regulations, and statutes of both the NFIP and antitrust laws, Plaintiffs are inherently invoking claims between themselves and the federal government, as well as claims under the Sherman Antitrust Act. (Rec. Doc. 1, 5). A "fair reading of the complaint," however, makes clear that Plaintiffs were not invoking antitrust laws or NFIP regulations to state federal claims. *See Howery v. Allstate Ins. Co.*, 243 F.3d 912, 917-18 (5th Cir. 2001). From the context of the original Petition, it appears that Plaintiffs' mention of any federal law merely served to describe the background of the WYO program and Kepper's involvement with NFIP and FEMA, not to allege a separate cause of action under Sherman Antitrust laws or breach of contract with a federal agency. This conclusion is bolstered by the fact that the complaint explicitly alleges that State Farm violated specific issues in *Louisiana* antitrust law, but makes "no explicit mention of any specific federal statute or regulation." (Rec. Doc. 1-1, 10-11); *Howery*, 243 F.3d, at 918.

Federal jurisdiction is sustainable only if Plaintiffs' antitrust claims require resolution of a substantial question of federal law. *Howery*, 243 F.3d, at 918. Whether Plaintiffs' claim for breach of contract is between State Farm and Christa or between NFIP and Christa is a matter of community property and therefore is not a matter for this Court to decide. To prove Plaintiffs' antitrust claims are preempted by NFIP and FEMA federal law, Defendants must show that "(1) a federal right is an essential element of Plaintiffs' state claim, (2) interpretation of the federal right is necessary to resolve the case, and (3) the question of federal law is substantial." *Id.* Defendants fail all three elements of the *Howery* test.

First, as previously noted, no federal right is an essential element of Plaintiffs' claims. In the original Petition for Damages, Plaintiffs alleged specific Louisiana law in regards to antitrust violation, and Plaintiffs never mention the Sherman Act or the Clayton Act. (Rec. Doc. 1-1, 10).[3] This claim is bolstered by the fact that Plaintiffs filed a subsequent motion with this Court, clarifying they never meant to implicate any federal antitrust laws in regards to the ownership of the flood policies, stating "[t]he instant response is filed merely out of an abundance of caution to clarify any misconceptions… although Plaintiffs' 'Petition for Damages' utilizes the phrase 'antitrust laws' Plaintiffs' motion to remand makes it unequivocally clear that no Sherman Antitrust Act or Clayton Antitrust Act claim is being pursued." (Rec. Doc. 52, 1). Any conduct by State Farm that violates federal anti-competition or antitrust laws could possibly fall within the broad scope of the Louisiana state laws, but mention of such antitrust violations by Plaintiffs does not require this Court to determine such violations under federal law.

Second, interpretation of federal rights is not necessary to this case. No federal right is an element of any of Plaintiffs' state law claims, therefore no federal right needs to be interpreted. *Howery*, 243 F.3d, at 918. Further, Defendants do not allege any NFIP regulation or contract is a *necessary* element of Plaintiffs' state law claims, and thus does not create federal question jurisdiction. *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 809-10 (1988). A suit does not create federal question jurisdiction when the federal question appears only in an alternative argument. *Id.* "An expansive interpretation of the federal question statute to allow federal courts to assert jurisdiction over cases with tangential and inessential federal components would step upon the authority of state courts to decide state law and ignore the capacity of state courts to decide

---

[3] Plaintiffs specifically cite La. Rev. Stat. 51:122l 51:121, 51:123, and 51:1405. (Rec. Doc. 48-2).

questions of federal law." *Howery*, 243 F.3d, at 918-19. It is true that determining property *administration* of NFIP policies requires the application of federal law, and federal courts have an interest in upholding nationally uniform policies, but this case is not about the administration of flood policies between agents and clients, but rather about ownership of national flood policies as between two local parties. *See generally Joly v. Pappalardo Agency, Inc.*, 2007 WL 146454 (E.D. La. 2007); (Rec. Doc. 1-1). Whether such breach of contracts regarding ownership of the flood-policies may give rise to some NFIP involvement is not a claim to determine the federal administration of WYO-policies, and federal law is not a necessary element of Plaintiffs' claims.

Third, the federal question in this case, NFIP regulations and statutes, are certainly not "substantial." Plaintiffs' claims center on ownership of property interests and potential Louisiana unfair trade practices. Solely because Kepper's WYO-policies are regulated under federal law does not create a federal question when the conflict is between State Farm, local agents, and the Plaintiffs. "The fact that a federal defense may be raised to the plaintiff's action, even if both sides concede that the only real question at issue is created by a federal defense, will not suffice to create federal question jurisdiction." *Aaron v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.,* 876 F.2d 1157, 1161 (5th Cir. 1989). State law issues overwhelm any federal law issues. No federal question jurisdiction exists in this case.

## D. Defendant's Motion to Dismiss

Defendant has also filed a Motion to Dismiss, alleging Plaintiffs never entered into a contract with State Farm for the return of Kepper's policies, and, as a result, there is nothing owed to Christa as no contract was ever even established. (Rec. Doc. 13-1, 10-11). Defendants allege that Plaintiffs

claims are against NFIP, and therefore all claims involve NFIP's exercise of discretion and scope and reach of federal regulations. (Rec. Doc. 13-1, 10). Whether a contract ever existed and a resulting breach of contract took place between Plaintiffs and NFIP or Plaintiffs and State Farm, is not a matter to be decided by this Court and should instead be decided on remand. Accordingly, the Court DENIES Defendants' Motion to Dismiss for failure to state a claim as MOOT.

### III. CONCLUSION

Accordingly,

IT IS ORDERED that the Plaintiffs' Motion to Remand to the Civil District Court for the Parish of New Orleans be GRANTED (Rec. Doc. 14) and the Defendants' Motion to Dismiss be DENIED AS MOOT. (Rec. Doc. 13).

On this 21st day of December, 2012

THE HONORABLE HELEN G. BERRIGAN
EASTERN DISTRICT OF LOUISIANA